IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

NANCY HUNTER,

    Plaintiff, individually and on
    behalf of a class of persons,

v.

SELECT PORTFOLIO SERVICING.,

    Defendant.

**NOTICE OF REMOVAL**

Civil Action No. 2:25-cv-00241
(formerly Kanawha County, WV
Civil Action No. 25-C-345)

    This putative class action is properly before this Court because the Plaintiff's case is individually removable pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446, and the Court has supplemental jurisdiction over the putative class plaintiffs' claims. The case is also independently removable pursuant to the Class Action Fairness Act ("CAFA") under 28 U.S.C. §§ 1332, 1446, and 1453.

    Select Portfolio Servicing, Inc. ("SPS") has removed this case from the Circuit Court of Kanawha County, West Virginia, to the United States District Court for the Southern District of West Virginia, Charleston Division. SPS denies the allegations contained in the complaint and files this Notice without waiving any defenses, exceptions, or obligations that may exist in its favor in either state or federal court.[1] SPS will timely respond to the Complaint as provided by Rule 81 following the removal of this action. As demonstrated herein and by the affidavit accompanying this removal, jurisdiction is proper with this Court.

---

[1] Nothing in this Notice is to be construed as an admission of liability or a confirmation of the amount of damages alleged. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (holding that a defendant does "not have to confess liability in order to show that the controversy exceeds the threshold" under CAFA).

1

## I. STATEMENT OF COMMENCEMENT OF ACTION

Plaintiff Nancy Hunter filed this putative class action on or about March 12, 2025, Civil Action No. 25-C-345, in the Circuit Court of Kanawha County. The Complaint was served on SPS via the West Virginia Secretary of State's office on March 14, 2025. Therefore, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days of receipt and service of the Summons and Complaint and is therefore timely. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

## II. PLEADINGS AND NOTICE TO STATE COURT

True and correct copies of the Complaint and all process, pleadings, and orders received by SPS to date with respect to this action, along with the state court's Docket Sheet are attached as *Exhibit A* hereto and are being filed along with this Notice of Removal. Pursuant to 28 U.S.C. § 1446(d), written notice of this removal is being served on the named plaintiff, through her attorneys, and is being filed with the Circuit Court of Kanawha County.

## III. SUMMARY OF CLAIMS PRESENTED

Plaintiff's single individual and putative class claim can be summarized as follows:

**Count I of the Complaint alleges that fees, including attorney fees, and other unspecified default charges were collected or attempted to be collected by SPS from Plaintiff and the putative class members in violation of West Virginia Code Sections 46A-2-127(g), 46-A-2-127(d), 46A-2-128(c), and 46A-2-128(d). (Compl. at ¶¶ 20 - 21);**

Plaintiff alleges that each of the alleged statutory violations entitle she, and the putative class members, to statutory penalties in an amount of up to $1,000.00 for each violation pursuant to West Virginia Code Sections 46A-5-101(1) and 46A-5-106. (Compl. at Relief Sought) Moreover, the Complaint prays for actual and compensatory damages, reasonable attorney fees,

pre- and post-judgment interest, and all other relief the Court deems appropriate. (*Id*.) In addition, Plaintiff's putative class Complaint includes a request for injunctive, declaratory and other relief as appropriate for the class as a whole, including an order prohibiting foreclosures from proceeding. (Compl. at Relief Sought).

### IV. STATEMENT OF STATUTORY BASIS FOR FEDERAL JURISDICTION

#### A. Federal Jurisdiction exists over Plaintiff's individual claims

##### 1. *Diversity Jurisdiction Exists over Plaintiff's Individual Claims*

Plaintiff is a citizen of the State of West Virginia. (Compl. at ¶ 2). SPS is a Utah corporation with its principal place of business in Utah. (*See* Declaration of Diane Weinberger attached hereto as *Exhibit B* and Compl. ¶3). Accordingly, there is complete diversity of citizenship among the parties. This action is within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. § 1332(a). This statute provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). This statute permits Defendant SPS to remove the action from West Virginia state court to this Court. Plaintiff filed the state court action in the Circuit Court of Kanawha County, which is located within *this* Court's district and division. Thus, venue properly lies in the United States District Court for the Southern District of West Virginia, Charleston Division, for purposes of this Notice of Removal.

##### 2. *More than $75,000 is in controversy in Plaintiff's Individual Claim*

Pursuant to 28 U.S.C. § 1332(c)(1), this action involves a controversy between citizens of different States. The amount in controversy for Plaintiff's individual claim exceeds $75,000, thereby satisfying the diversity jurisdiction requirements of 28 U.S.C. § 1332(a). In the Fourth

Circuit, "the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710-11 (4th Cir. 2002). Importantly, "the appropriate measure is not he amount of damages Plaintiff[] will ultimately recover, but rather the *alleged* amount in controversy." *Hardig v. Certainteed Corp.*, No. 3:11-cv-00535, 2012 U.S. Dist. LEXIS 15852, at *3 (W.D.N.C. Feb. 9, 2012) (emphasis added). If the removing party establishes by a preponderance of the evidence that more than $75,000 is in controversy, the district court must exercise its jurisdiction. *Perilli v. Nationwide Mut. Ins. Co.*, No. 5:10-cv-56, 2011 U.S. Dist. LEXIS 64779, at *9 (N.D. W. Va. June 17, 2011); *see also Gum v. Gen. Elec. Co.*, 5 F. Supp. 2d 412, 415 (S.D. W. Va. 1998) ("It is well-established federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" (citation omitted)).

When determining the amount in controversy, the Court should consider the "cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record." *Miller v. Bank of America*, No. 1:10-cv-213, 2011 WL 2429350, at *1 (N.D. W. Va. June 13, 2011). Additionally, a plaintiff's demand for actual damages, punitive damages, equitable relief, and attorneys' fees should be considered by the Court in determining the amount in controversy. *See, e.g., Maxwell v. Wells Fargo Bank, N.A.*, No. 2:09-cv-500, 2009 WL 3293871, at *3-5 (S.D. W. Va. Oct. 9, 2009) (including actual damages, and attorneys' fees in the calculation of the jurisdictional amount in controversy); *Weddington v. Ford Motor Credit Co.*, 59 F. Supp. 2d 578, 584-85 (S.D. W. Va. 1999) (including actual damages, punitive damages, and attorneys' fees as part of the amount in controversy).

Here, Plaintiff alleges that SPS improperly "threatened the collection of and assessed and collected illegal default fees" in violation of the West Virginia Consumer Credit Protection Act

("WVCCPA") thereby entitling her to civil penalties. (Compl. at ¶ 1 and Relief Sought). Under the WVCCPA, a Court could impose civil penalties of up to $1,000.00 under Sections 46A-5-101(1) and 46A-5-106 for each statutory violation.[2]

Plaintiff's mortgage loan has been in default for several years. The Complaint generally identifies collection letters Plaintiff received from SPS that "threatened the collection of property evaluation, inspections, court costs, or attorney fees." (*See generally*, Compl.) Plaintiff does not provide much detail regarding SPS' "debt collection letters" which she alleges violated the WVCCPA, though she specifically references a letter dated May 16, 2024 (hereinafter as "Reinstatement Letter"). (Compl. ¶ 6). SPS has identified six instances wherein a Reinstatement Letters, like the one identified in the Complaint, were mailed to Plaintiff. (*Exhibit 2 to Declaration*, SPS Reinstatement Letters). Plaintiff claims that SPS mailed letters threatening the collection of property evaluation, inspections, court costs, or attorneys fees and that SPS' letters constitute an unlawful attempt to collect such fees and costs in violation of West Virginia law. As a result, Plaintiff's individual claim seeks a penalty for at least six alleged statutory violations arising out of SPS' servicing activities in connection with her mortgage loan. Six violations at the inflation adjusted penalty amount of $1,340.99 exposes SPS to potential liability of $8,045.94 based on the alleged statutory violations. (*e.g.*, 6 x $1,340.99 = $8,045.94).

In addition to statutory damages, Plaintiff seeks an injunction prohibiting SPS from initiating foreclosure proceedings against her. (Compl. at ¶ 3 and Relief Sought). The original

---

[2] Plaintiff seeks civil penalties pursuant to West Virginia Code §§46A-5-101(1) and 46A-5-106. (Compl. at Relief Sought). Section 46A-5-101(1) provides: "a penalty of $1,000 per violation." Section 46A-5-106 allows the court to adjust the damages "in an amount equal to the consumer price index." According to the U.S. Bureau of Labor Statistics consumer price index, $1,000 adjusted for inflation from September 1, 2015 to February 2025 is $1,340.99. Hence, a court could impose penalties under the WVCCPA of up to $1,340.99 per violation.

amount of Plaintiff's loan was $77,350.00 and the principal balance of the loan currently exceeds $57,000. (*Exhibit B*, ¶ 6). Should Plaintiff be awarded such relief, the amount could prospectively equate to an amount far greater than the $75,000 threshold, especially if the actual value of the property is taken into account. Plaintiff's general request for equitable relief, could include attempts to have the principal balance of the loan reduced or voided, as well as a return of all payments given her request for actual damages (Compl. at Relief Sought).

Where a plaintiff seeks equitable or declaratory relief, the "amount in controversy is measured by the value of the object of the litigation." *Woodrum v. Mapother & Mapother P.S.C., Inc.*, 2010 U.S. Dist. LEXIS 107101, at *8-10 (S.D. W.Va. Oct. 5, 2010)[3] (finding that in an action seeking to invalidate the portions of a indebtedness not legitimately incurred that the amount and balance of that debt should be considered in valuing the litigation); *Nationstar Mortgage, LLC v. Knox*, 351 Fed. Appx. 844, 848 (5th Cir. 2009) (finding that the amount in controversy was satisfied where "the total payments due on the Knoxes' mortgage exceeded $107,000."). Here, because the validity of Plaintiff's loan and SPS' ability to foreclose is at issue, and the amount of the original loan exceeds $75,000, the amount in controversy requirement is met exclusively on the basis of the loan amount.[4]

Finally, Plaintiff has also requested actual and compensatory damages along with an award of attorneys' fees. Those damages (although unspecified at this point) along with attorneys' fees, which may be substantial in light of the posture of this case, add even more monetary value to the overall amount in controversy here. *McGraw v. Discovery Financial Services*, 2005 U.S. Dist.

---

[3] Copies of all unpublished cases are attached hereto as *Exhibit C*.
[4] Though the original loan amount exceeds the $75,000 amount in controversy requirement, the total amount at issue is in excess of $85,395.95, after alleged statutory penalties are accounted for. (e.g., $77,350.00 + $8,045.94 = $85,395.94).

LEXIS 37111 (S.D.W.Va. 2005) (attorneys' fees under the WVCCPA can be considered for amount in controversy purposes).  In light of the foregoing evidence, the amount in controversy on Plaintiff's individual claims easily exceeds $75,000. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L. Ed. 2d 890 (1961) (holding that the amount in controversy is satisfied unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount).

> 3. *Because the court has jurisdiction over the named plaintiff's claims, it has supplemental jurisdiction over the class claims.*

Where at least one named plaintiff in an action satisfies the amount in controversy, the court has supplemental jurisdiction over the claims of other plaintiffs which arise out of the same Article III case or controversy and which may be less than that amount, and removal is proper. *See Exxon Mobil Corp. v. Allapattah Services*, 545 U.S. 546, 125 S. Ct. 2611 (2005).  Thus, jurisdiction also is appropriate over the claims of the proposed class because Plaintiff's individual claim satisfies the jurisdictional threshold.

Accordingly, this Court has jurisdiction over Plaintiff's individual claims based on the penalties sought and the potential injunctive relief requested, and the court has supplemental jurisdiction over the claims of other plaintiffs (*i.e.*, putative class members) which arise out of this same case or controversy.

B.  Federal Jurisdiction also exists over Plaintiff's putative class claims under CAFA

In addition to the above grounds for removal, this action is also within the original subject matter jurisdiction of the United States District Court pursuant to CAFA (28 U.S.C. § 1332(d)(2)(A)), which vests federal district courts with original jurisdiction over a class action in which any putative class member is a citizen of a state different from any defendant and the amount in controversy exceeds $5,000,000, exclusive of interests and costs.  28 U.S.C. § 1332(d)(2)(A).

This statute applies here because there are more than 100 putative class members and the amount in controversy is met. 28 U.S.C. § 1332(d)(5)(B); *see also Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 298 (4th Cir. 2008). As discussed more fully below, this action satisfies all of CAFA's statutory requirements for removal.

       1.    *Existence of a class action.*

For purposes of federal jurisdiction, a class action is any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or any "similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." *Id.* § 1332(d)(1)(B). A class need not be certified prior to a federal court taking jurisdiction under § 1332(d)(2). *Id.* § 1332(d)(8).

Plaintiff filed this action as a putative class action pursuant to West Virginia Rule of Civil Procedure 23, (Compl. at ¶¶ 14-35)[5], seeking to represent a class of "[a]ll West Virginia borrowers at the time of the filing of this action, within the four years of the filing of this complaint through the date of class certification that Defendant mailed a collection letter to that threatened the collection of property evaluation, inspections, court costs, or attorney fees." (Compl. ¶ 14). Plaintiff's individual and class allegation focus upon the assertion that SPS improperly mailed letters which threatened the collection of fees that are not recoverable under West Virginia law. (Compl. at ¶¶ 8-13). On behalf of those allegedly aggrieved consumers, Plaintiff seeks: (1) an injunction prohibiting SPS from engaging in the purportedly unlawful conduct; (2) an injunction prohibiting SPS from initiating foreclosure proceedings on any accounts in West Virginia to which the letters were sent; (3) a declaration that SPS breached the parties' contract; (4) a civil penalty

---

[5] The Complaint contains a section labeled "The Proposed Class." This section begins with paragraph 14, before skipping directly to paragraph 32 and continuing sequentially, concluding with paragraph 35. The citation above reflects this numbering.

for each alleged violation of the WVCCPA; (5) actual and compensatory damages; (6) attorneys' fees under the WVCCPA; (7) pre- and post-judgment interest; and (8) all other relief the Court deems appropriate. (Compl. at Relief Sought).

Rule 23 of the West Virginia Rules of Civil Procedure is similar to Rule 23 of the Federal Rules of Civil Procedure. *Compare* W.Va. R. Civ. P. 23 *and* Fed. R. Civ. P. 23; s*ee also State ex rel. Erie Fire Ins. Co. v. Madden*, 204 W. Va. 606, 609 n.5, 515 S.E.2d 351, 354 n.5 (W. Va. 1998) ("We note that effective April 6, 1998, this Court adopted a new version of West Virginia Rules of Civil Procedure Rule 23. Our new version is essentially identical to the federal rule and the rule in most states."). It authorizes one person to sue on behalf of a class of similarly situated persons. W.Va. R. Civ. P. 23(a) ("One or more members of a class may sue . . . as representative parties on behalf of all . . . ."). Because Plaintiff brings this action pursuant to a state rule that, like Federal Rule 23, authorizes one person to bring a representative action on behalf of a class, it is a "class action" subject to the provisions of 28 U.S.C. § 1332(d).

    2.  *Complete diversity exists between all class members and SPS.*

Pursuant to CAFA, federal district courts have jurisdiction over a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Section 1332(c)(1) deems a corporation to be a citizen of the state in which it is incorporated and the state in which it operates its principal place of business. As established earlier, SPS is a citizen of a state other than West Virginia. (Compl. ¶ 3; *Exhibit B*).

Plaintiff is a resident of West Virginia, and the class allegedly includes "[a]ll West Virginia borrowers at the time of the filing of this action, within the four years of the filing of this complaint through the date of class certification that Defendant mailed a collection letter to that threatened the collection of property evaluation, inspections, court costs, or attorneys fees." (Compl. ¶ 14).

Thus, on the face of the Complaint, this is an action in which all putative class members are West Virginia citizens. Therefore, the requisite diversity of citizenship exists. 28 U.S.C. §1332(d)(2)(A).

        3.     *There are more than 100 putative class members.*

Section 1332(d)(2)(A) applies only if the class consists of 100 or more putative class members. 28 U.S.C. § 1332(d)(5)(B). Plaintiff avers that the class consists of "[a]ll West Virginia borrowers . . ." with accounts that SPS "threatened" to collect certain alleged unlawful costs and fees. (Compl. ¶ 1, 7, 14, 21). A search of its data revealed that SPS serviced at least 4,464 loans from March 19, 2021 through March 19, 2025 for borrowers whose property was located within the state of West Virginia. (*Exhibit B*, ¶ 10).

However, a removing party must read a complaint "as a whole" despite the seemingly broad class definition contained at paragraph 14 of the Complaint. *See Caufield v. EMC Mortg. Corp.*, Civil Action No.: 2:11-cv-0244, 2011 U.S. Dist. LEXIS 78646 * 17 (S.D. W. Va. July 19, 2011). In doing so, Plaintiff's putative class claims under the WVCCPA arise in connection with the allegation that SPS purportedly threatened the "collection of property evaluation, inspections, court costs, or attorney fees" via letters. (Compl. at ¶ 14).

Plaintiff attached a reinstatement letter to the Complaint in this case. In searching its data, SPS determined that 202 borrowers on loans in West Virginia received at least one reinstatement letter like the one cited in paragraph six of the Complaint. (*Exhibit B*, ¶ 10). In stating this information, SPS does not admit any actions were unreasonable, improper, or that it violated the WVCCPA in sending said letters to borrowers in default. But, even with a narrow reading of Plaintiff's proposed class definition, CAFA's numerosity requirement of 100 class members is easily satisfied as there appear to be at least 202 borrowers who fit within the class sought to be certified. (*Id.*)

4.   *The Amount in Controversy exceeds $5,000,000.*

Under CAFA, "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests or costs." 28 U.S.C. § 1332(d)(6). Among other relief, Plaintiff seeks to recover statutory civil penalties based on the allegations that SPS collected or "threatened" to collect costs and fees for property evaluation, inspections, court costs, or attorneys fees. (Compl. ¶¶ 14 - 21 citing West Virginia Code §§ 46A-2-127(g), 46A-2-127(d), 46A-2-128(c), 46A-2-128(d)). The putative class consists of all West Virginia borrowers who had or have loans serviced by Defendant who were sent letters that allegedly threatened to collect certain fees and costs (Compl. ¶¶ 1, 7, 14, 21).

As evidenced by the declaration, SPS searched its records to identify persons in West Virginia 1) who had or have loans serviced by SPS for the four-year time period preceding the filing of this Complaint; and also 2) those loan accounts serviced by SPS that received at least one reinstatement letter during that period. (*Exhibit B* at ¶ 10). The second number focuses not simply on borrowers who are in default, but rather those borrowers who actually received the letter of which Plaintiff specifically complains. (Compl. ¶ 6).

For herself and the class of West Virginia consumers, Plaintiff seeks civil penalties of as much as $1,340.99 for each violation of the WVCCPA. (Compl. at Relief Sought). If Plaintiff's claim is, as alleged, representative of class members' claims, and if the penalties that she seeks for herself are used as a factor in computing the amount in controversy for the putative class of 202 West Virginia borrowers who received the type of letter being attacked by her Complaint, the amount in controversy easily exceeds $5,000,000. More precisely, in examining Plaintiff's penalty claims, if she and her class members were successful and were each awarded just one maximum

statutory penalty per class member for a single default charge (which they each incurred), SPS would face potential liability of $270,879.98 for its alleged unlawful default charges. (*e.g.*, $1,340.99 inflation adjusted penalty x 202 residents receiving reinstatement letters = $270,879.98). As Plaintiff received at least six of the reinstatement letters like the one she specifically cites in paragraph 6 of the Complaint, the number of alleged statutory violations likely exceeds the number of putative class members.

Finally, the above analysis does not even consider the amount of attorneys' fees and actual damages, in addition to class wide injunctive and declaratory relief, that Plaintiff also seeks. The unpaid balances of the 202 loans total $17,684,742.57, greatly exceeding the $5,000,000 CAFA threshold. (*Exhibit B*, ¶ 11).  As Plaintiff seeks injunctive relief that would prevent SPS from foreclosing on the defaulting borrowers' properties, the total unpaid balance of the 202 loans is directly at issue in this litigation. This is yet another independent measure by which more than $5,000,000 is in controversy.  Once these above factors have been considered, the requisite amount in controversy exists pursuant to the requirements under CAFA and jurisdiction is proper with this Court.

## V. REQUEST FOR BRIEFING AND ORAL ARGUMENT

In the event any question arises as to the propriety of the removal of this matter, SPS requests the opportunity to present briefs, oral argument, and, if necessary, additional affidavits and other evidence in support of its position that removal is proper.

## VI. CONCLUSION

WHEREFORE, SPS hereby removes this matter from the Circuit Court of Kanawha County West Virginia to the United States District Court for the Southern District of West Virginia,

Charleston Division based on 28 U.S.C. §§ 1332, 1446, and 1453, and also individually pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446

                Select Portfolio Servicing, Inc.

                *s/Matthew D. Patterson*
                Matthew D. Patterson (WVSB # 11566)
                E-Mail: matt.patterson@nelsonmullins.com
                Jeremy C. Hodges (WVSB # 11424)
                E-Mail: jeremy.hodges@nelsonmullins.com
                NELSON MULLINS RILEY & SCARBOROUGH LLP
                1320 Main Street / 17th Floor
                Columbia, SC  29201
                (803) 799-2000

                *Attorneys for Select Portfolio Servicing, Inc.*

April 14, 2025