IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NANCY HUNTER,

          Plaintiff,

v.                                  CIVIL ACTION NO. 2:25-cv-00241

SELECT PORTFOLIO SERVICING, INC.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiff Nancy Hunter's Motion to Remand, [ECF No. 11]. Defendant Select Portfolio Servicing, Inc. ("SPS") filed a response in opposition, [ECF No. 19], to which Plaintiff replied, [ECF No. 20]. For the reasons set forth below, Plaintiff's motion, [ECF No. 11], is **GRANTED**, and this case is hereby **REMANDED** to the Circuit Court of Kanawha County, West Virginia.

    **I.**    **BACKGROUND**

On March 12, 2025, Ms. Hunter filed a complaint in the Circuit Court of Kanawha County, seeking relief individually and on behalf of a putative class. [ECF No. 1-1, ¶ 1]. According to the Complaint, Ms. Hunter obtained a mortgage loan in 2005 secured by her home in Kanawha County. *Id.* ¶ 4. SPS subsequently acquired the servicing rights to Ms. Hunter's mortgage and sent Ms. Hunter multiple letters after she defaulted on her loan. *Id.* ¶¶ 5–6. Ms. Hunter alleges SPS "unfairly, unreasonably, and unlawfully threatened the collection of and assessed and collected illegal default fees in the form of property evaluations, inspections, court costs, and attorney's fees from Plaintiff and other class members." *Id.* ¶ 1. Ms. Hunter asserts SPS's conduct violated both

the terms of the mortgage loan agreements and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101 *et seq. Id.* ¶¶ 1, 9–13.

Ms. Hunter seeks several forms of relief for herself and all class members, including (1) an injunction prohibiting SPS from engaging in the unlawful conduct alleged, (2) "an injunction prohibiting Defendant from initiating foreclosure proceedings on any accounts in West Virginia where the loans were serviced in the manner described [in the complaint]," (3) a declaration that SPS breached its contractual obligations, (4) civil penalties for violations of the WVCCPA, (5) actual and compensatory damages, (6) reasonable attorneys' fees and costs, (7) pre- and post-judgment interest, and (8) any other appropriate relief. [ECF No. 1-1, ¶ 4].

On April 14, 2025, SPS filed a notice and asserted two grounds for removal to federal court, the same grounds it argues in response to Ms. Hunter's motion. [ECF Nos. 1, 19]. First, SPS asserts "Plaintiff's case is individually removable pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446, and the Court has supplemental jurisdiction over the putative class plaintiffs' claims." *Id.* ¶ 1. Additionally, SPS contends the case is removable in accordance with the Class Action Fairness Act ("CAFA") under 28 U.S.C. §§ 1332, 1446, and 1453. *Id.*

Ms. Hunter does not dispute the parties are diverse for purposes of removal. Rather, she argues that remand is warranted because SPS has failed to establish that the amount in controversy exceeds the jurisdictional threshold for an individual or class claim by a preponderance of the evidence. [ECF No. 12, ¶¶ 4–8]. Ms. Hunter also asserts that SPS has not shown by a preponderance of the evidence that the proposed class includes at least 100 members, as required under CAFA. *Id.* ¶ 10.

## II.     LEGAL STANDARD

An action may be removed from state court to federal court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(b). Courts construe removal jurisdiction strictly because of the significant federalism concerns removal implicates. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "In a removal action, the defendant bears the burden of proving, by a preponderance of the evidence, that the plaintiff's claims exceed the jurisdictional amount." *Moses Auto., Inc. v. American Honda*, 581 F. Supp. 2d 763, 767 (S.D. W. Va. 2007). This burden, moreover, cannot be satisfied by mere speculation or conjecture. *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 4th 178, 222 (4th Cir. 2022).

A district court has original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a). In the Fourth Circuit, "the test for determining the amount in controversy in a diversity proceeding is the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (internal quotations omitted). "The removability of a case depends upon the state of the pleadings and the record at the time of the application for removal." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (internal quotations omitted).

To attain federal jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2)(A), there must be (1) more than $5 million in controversy, (2) at least one member of the plaintiff's class who is a citizen of a state different than at least one of the defendants, and (3) 100 or more class members. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B). While "no antiremoval presumption attends cases invoking

CAFA," the removing party nonetheless bears the burden of proving federal jurisdiction by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014).

### III. DISCUSSION

The parties agree there is complete diversity for the individual claim and the required minimal diversity under CAFA. They disagree, however, about the amount in controversy requirement. SPS contends the amount in controversy is easily met under both theories because it should at least equate to the outstanding amount on each mortgage loan—i.e., the purported cost of the requested injunctions to SPS. [ECF No. 1, at 6, 12]. While courts have, in select circumstances, accepted such a valuation method to assess the amount in controversy, those circumstances are not present here. Therefore, I find that SPS has not proven the requisite amount in controversy under either of its asserted theories for removal. Because federal jurisdiction is defeated in the absence of this requirement, I do not address the parties' other arguments.

#### A. Plaintiff's Individual Claims

Courts generally refer to the face of the complaint for an alleged monetary sum to assess the amount in controversy. *Dart*, 574 U.S. at 84; 28 U.S.C. § 1446(c)(2). While it is possible to deduce some reasonably certain figures in this action based on the alleged statutory violations and associated penalties, the amount in controversy inquiry becomes more difficult where a plaintiff requests relief that does not yet have an ascertained value. *Bartnikowski v. NVR, Inc.*, 307 F. App'x. 730, 734 (4th Cir. 2009). Here, the parties contest the value that should be assigned to the requested injunction prohibiting foreclosure, and SPS does not offer any evidence as to the sum of other

damages categories. For the reasons explained below, SPS has not proven by a preponderance of the evidence that Ms. Hunter's claims exceed $75,000.

The parties agree that one violation of the WVCCPA is $1,340.99, adjusted for inflation, and that the proper calculation should be based on five allegedly unlawful letters sent to Ms. Hunter. [ECF No. 19, at 13]. Therefore, statutory penalties equate to $6,704.95 for five alleged violations. *Id.* Notwithstanding this amount, SPS has not proven that any other request for relief carries a value that will assist it in reaching the $75,000 threshold.

With regard to declaratory and injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). For an injunction specifically, the court must assess value "by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010). It is unclear precisely which figure SPS contends should be assigned to value the injunction. In its filings, SPS refers to (1) the value of the property, (2) the original loan amount of $77,350, [ECF No. 1, at 6], and (3) the current outstanding loan balance of approximately $57,000, [ECF No. 19, at 13]. Conversely, Ms. Hunter argues that SPS's right to foreclose is merely limited because her action does not permanently terminate SPS's right to foreclose, so the injunction should not be valued in any of the three ways SPS asserts.

As a preliminary matter, SPS takes the position that the requested injunction "indefinitely prevent[s] foreclosure" and lacks "temporal limitation," thereby necessitating a higher valuation of the injunction. [ECF No. 19, at 13]. Ms. Hunter's requested injunction cannot reasonably be construed as a request for a permanent injunction. Taken in its entirety, the Complaint reflects that

Ms. Hunter is seeking to temporarily enjoin foreclosure during the pendency of this case. Ms. Hunter in no way asserts that the alleged violations against SPS terminate SPS's right to foreclose; she simply seeks to enjoin such an action until this matter is resolved.

As to the value that should be attributed to the injunction, this issue hinges on whether foreclosure is SPS's only avenue to collect on the outstanding loan. Where courts have found that "the full balance of the loan was the amount in controversy, the common thread was that foreclosure was the defendant's only avenue to collect on the debt." *Addington*, 2017 WL 4685428, at *5. The Southern and Northern Districts of West Virginia "have thoroughly examined the issue of whether the value of a home equates to the value of the litigation when a plaintiff seeks to halt an <u>impending</u> foreclosure proceeding." *Price v. PennyMac Loan Serv. LLC*, No. 1:18-cv-00951, 2018 WL 4291741, at *4 (S.D. W. Va. Sept. 6, 2018) (Faber, J.) (citing cases).[1] The analysis distinguishes between scenarios in which a plaintiff remains personally obligated on the loan and those in which personal liability has been discharged. "[I]f the plaintiff is not obligated on the loan, and therefore foreclosure provides the only remedy for a defendant, the value of the home is the amount in controversy." *Id.* Therefore, where a plaintiff remains personally liable on a mortgage loan, a defendant cannot prove the pecuniary value of an injunction by referencing any loan amount or the value of the property.[2]

---

[1] *Winnell v. HSBC Mortg. Servs., Inc.*, No. 2:11-cv-00561, 2011 WL 5118805, at *2 (S.D. W. Va. Oct. 28, 2011) (Goodwin, J.); *Bohigian v. Flagstar Bank, FSB*, No. 1:11-cv-181, 2012 WL 112322, at *1 (N.D. W. Va. Jan. 12, 2012); *Carter v. Nat'l City Mortg., Inc.*, No. 1:14CV70, 2014 WL 2862953, at *3 (N.D. W. Va. June 24, 2014); *Hudak v. Selene Fin. LP*, No. 1:15-cv-20, 2015 WL 1539740, at *1–2 (N.D. W. Va. Apr. 7, 2015); *Addington*, 2017 WL 4685428, at *5; *Schubert v. Fed. Nat'l Mortg. Ass'n*, No. 5:12-cv-166, 2013 WL 12137236, at *2 (N.D. W. Va. Mar. 25, 2013); *Raspet v. Shellpoint Mortg. Servicing, a Div. of New Penn. Fin., LLC*, No. 1:18-cv-19, 2018 WL 1785565, at *4 (N.D. W. Va. Apr. 13, 2018).

[2] Notably, there is a distinction that is not always made clear between the original loan amount, the outstanding balance on the loan, and the value of the property. When determining the amount in controversy, courts have sometimes framed the inquiry as determining whether the home itself is in controversy. *See Price*, 2018 WL 4291741,

SPS has not alleged that Ms. Hunter is no longer personally liable on the mortgage loan, so it cannot prove the amount in controversy in any of the three ways it asserts. In a footnote, SPS states that Ms. Hunter had "declared bankruptcy twice, and she was in bankruptcy mere days before she filed this suit." [ECF No. 19, at 10 n.7]. Yet, SPS's own characterization of the effect of that bankruptcy is equivocal. It states that "*assuming* a discharge had been granted, SPS could not simply sue for default and foreclosure *would have been* the only remedy available for SPS . . . ." *Id.* (emphasis added). Although SPS references the possibility of a discharge, this conditional language effectively concedes that Ms. Hunter's personal liability on the loan was not, in fact, discharged.

Because Ms. Hunter appears to remain obligated on the loan, foreclosure is not SPS's only recourse. As Ms. Hunter acknowledges, SPS retains the ability to sue for payment. SPS correctly observes that the inquiry "is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (internal quotations omitted). Nevertheless, the estimate must still comport with established law defining the parameters of what constitutes the "object of the litigation." Here, neither the value of the property nor any loan amount falls within those articulated parameters.

---

at *5 ("[T]he court fails to see how the consideration of loss mitigation options implicates the value of the home . . . ."). The reference, however, often means the outstanding loan balance even though it is sometimes expressed as "the value of the property." *Id.* at *4 (citing cases that discuss the outstanding balance while the articulated test states: 'value of the home'); *see also Woodfell*, 2020 WL 3964758, at *4–5 (providing a thorough analysis of the relevant line of cases). The "value of the property" is simply a tailored label for the "object of the litigation." To the extent that SPS argues for all values, I have addressed them separately in this opinion. However, it is significant that "the value of the property" often refers to the outstanding loan amount in other opinions. That is not to say that the original loan amount or a true valuation of the entire property is never appropriate. My observation is merely based on the law that exists right now in these select circumstances.

SPS additionally argues that the value of the property is the basis of the controversy because Ms. Hunter's allegations differ from those made in *Caufield v. EMC Mortg. Corp.*, 803 F. Supp. 2d 519 (S.D. W. Va. July 19, 2011). Specifically, SPS argues that "Plaintiff filed this lawsuit to stop SPS from foreclosing . . ." because Ms. Hunter did not otherwise allege "that she should be considered for additional loss mitigation, nor [did] she allege that SPS failed to consider her for the same." [ECF No. 19, at 11–12]. Simply put, SPS argues that Ms. Hunter is effectively attempting to stall foreclosure because she is not otherwise requesting that her debt or agreement be reconsidered. The distinction SPS attempts to draw is not persuasive.

In *Caufield*, the plaintiff alleged that his lender did not honor a loan modification agreement and violated provisions of the WVCCPA. 803 F. Supp. 2d at 521–22. The plaintiff asserted individual and class claims for breach of contract and sought statutory penalties and injunctive relief. *Id.* at 521. Here, Ms. Hunter alleges that SPS's violations of the WVCCPA breached the parties' Note and Deed of Trust. While she is not seeking further consideration of her agreement, the character of Ms. Hunter's claims is nonetheless the same. She is seeking the adjudication of her rights under West Virginia law and her loan agreement, which governs the property for which she seeks an injunction. Accordingly, I see no reason to reach a different conclusion regarding the valuation of injunctive relief based on SPS's argument. In the absence of any other explanation for the pecuniary value of the injunction, SPS has not provided a value that can contribute to the amount in controversy assessment.

SPS also has not provided values for the other damages that Ms. Hunter seeks. While the WVCCPA allows for the recovery of attorney's fees, the amount "remains purely speculative when defendant does not provide any evidence or support as to their value." *Woodfell v. Gateway Mort.*

*Grp., LLC*, No. 2:19-cv-00658, 2020 WL 3964758, at *7 (S.D. W. Va. July 13, 2020) (Copenhaver, J.) (citing *Bartnikowski*, 307 F. App'x at 736 n.12). Similarly, requests for other categories of damages, such as actual and compensatory, are clearly speculative at this stage where there is no evidence to support an estimate. When SPS refers to the other forms of relief Ms. Hunter seeks, it does so in very general terms. SPS's stance is that the amount in controversy is established by either the value of injunctive relief or that value combined with statutory penalties, and other damages simply contribute more to the overall amount. [ECF No. 19, at 13]. Consequently, SPS has not provided proof, beyond mere speculation, that Ms. Hunter's claims exceed the threshold of $75,000, and this court does not have jurisdiction over Ms. Hunter's claims.

### B.     The Class's Claim Under CAFA

SPS's argument for removal under CAFA fails for the same reasons removal is improper as to Ms. Hunter's individual claims. While there is some disagreement about whether SPS properly identified the asserted number of relevant borrowers, SPS has nonetheless failed to prove that this case meets the statutory amount in controversy. At most, SPS has proven that statutory penalties amount to $270,879.98 while the rest of its argument is based on speculation and conjecture. [ECF No. 19, at 8]. SPS claims that 202 borrowers received letters like the ones Ms. Hunter received, but SPS has not provided any evidence that those 202 borrowers received more than one letter. SPS makes a conjectural assertion that potential penalties could amount to $1,354,399.90 if the identified 202 borrowers received as many letters as Ms. Hunter, but that is precisely the kind of speculation that is not permitted, and the number is far short of CAFA's $5 million requirement.

The value of injunctive relief also does not assist SPS in reaching the threshold of $5 million because SPS has failed to provide a quantifiable value that can be used in the assessment. As it did with Ms. Hunter's individual claim, SPS argues that the outstanding mortgage loan balances should be used to value the class members' injunctions. However, SPS has not demonstrated that any of the 202 borrowers had their personal liability discharged such that foreclosure is SPS's *only* avenue for recourse. In the absence of other proof demonstrating that class damages exceed $5 million, SPS has not carried its burden, and this court cannot exercise jurisdiction over the class's claims.

IV. **CONCLUSION**

Accordingly, Plaintiff's Motion to Remand is **GRANTED**, and this case is hereby **REMANDED** to the Circuit Court of Kanawha County, West Virginia.

The court DIRECTS the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:     September 18, 2025

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE